## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TALIA DAVIS, YUTASHIA GAMBLE, and PAMELA MIMS, on Behalf of Themselves and on Behalf of All Others Similarly Situated,** | § § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Case No. :**_____ |
| | § | **JURY TRIAL DEMANDED** |
| **THE GREAT AMERICAN DREAM, INC. d/b/a PIN UPS, CARY ADAMS and JAMES W. LEE, SR. individually,** | § § § § § | |
| **Defendants.** | § § | |

## COLLECTIVE ACTION COMPLAINT

## I.    SUMMARY

1.    Defendant The Great American Dream, Inc. d/b/a Pin Ups ("Pin Ups") and individuals James W. Lee, Sr. and Cary Adams (hereinafter "Defendants"), required Plaintiffs Talia Davis, Yutashia Gamble, and Pamela Mims (hereinafter "Plaintiffs") to work as exotic dancers at their adult entertainment club, but refused to properly compensate them at the applicable minimum wage, failed to properly utilize a tip credit compensation method and failed to compensate them at the applicable overtime rate.

1

2.     Specifically, Defendants misclassified dancers, including Plaintiffs, as independent contractors. Plaintiffs earned money in the form of tips from club patrons; some dancers received a tipped minimum wage from the club on an inconsistent basis and not in accordance with applicable wage laws. Further, Defendants took money from Plaintiffs by imposing various fees and levying arbitrary fines against them. Plaintiffs were also required to share their tips with Defendants' employees who do not customarily receive tips outside of a valid tip pool including house moms, DJs, and managers.

3.     As a result, Defendants failed to pay Plaintiffs and all other members of the collective action the minimum wage and overtime compensation they were entitled to under the Fair Labor Standards Act ("FLSA"). Further, based on the requirement that the dancers pay into an illegal tip pool, pay a fee to work each shift, and subject themselves to fines, any compensation they might have received from the club was not given "free and clear" of such financial penalties.

4.     Plaintiffs bring this collective action against Defendants seeking damages, backpay, restitution, liquidated damages, reasonable attorney's fees, costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

5.      Additionally, Plaintiff Gamble seeks damages arising out of illegal retaliation under the FLSA. As a result of Defendants' unlawful conduct, Gamble is entitled to compensatory damages, mental anguish damages, lost wages and liquidated damages equal to the lost wages, and other appropriate equitable relief. Gamble also seeks reasonable attorney's fees and costs as provided by the FLSA.

## II.   SUBJECT MATTER JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this District, including many of the wrongs herein alleged.

## III.   PARTIES AND PERSONAL JURISDICTION

8.      Named Plaintiff Talia Davis is an individual who resides in Fulton County, Georgia. Her consent to this action is attached as Exhibit "1."

9.      Named Plaintiff Yutashia Gamble is an individual who resides in Clayton County, Georgia. Her consent to this action is attached as Exhibit "2."

10.     Named Plaintiff Pamela Mims is an individual who resides in Douglas County, Georgia. Her consent to this action is attached as Exhibit "3."

11.     Putative opt-in Plaintiffs are those who are similarly situated to Named Plaintiffs and who will file a valid opt-in consent to join this action after notice of the collective action.

12.     The Great American Dream, Inc., doing business as Pin Ups in Atlanta, Georgia is a domestic for-profit corporation in existence in Georgia. This Defendant may be served with process by serving the registered agent for the company, Kenneth Sokolov, at Five Concourse Parkway, Suite 2600, Atlanta, GA 30328.

13.     James W. Lee, Sr. is the owner, Chief Executive Officer, Chief Financial Officer, and Secretary of The Great American Dream, Inc. He may be served with process at 442 Wallis Farm Way, Marietta, GA, 30064. He may also be served at the physical address for Pin Ups at 2788 E. Ponce de Leon Ave, Decatur, GA, 30030 or wherever he may be found.

14.     Cary Adams is the Chief Operating Officer of The Great American Dream, Inc. He may be served with process at the physical address for Pin Ups at 2788 E. Ponce de Leon Ave, Decatur, GA, 30030 or wherever he may be found.

## IV.     FLSA COVERAGE

15.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

4

16.    The Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

17.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

18.    Furthermore, Defendants have had, and continue to have, an annual gross business volume with Pin Ups of $500,000 or higher.

19.    Owner, CEO, CFO, and Secretary James W. Lee, Sr. is an employer under the FLSA because he 1) has the power to hire and fire the dancers and other employees, 2) supervises and controls employee work schedules or conditions of employment, 3) determines the rate and method of payment, and 4) is the primary individual responsible for maintaining employment records.

20.    Chief Operating Officer, Cary Adams is an employer under the FLSA because he 1) has the power to hire and fire the dancers and other club employees, 2) supervises and controls employee work schedules or conditions of employment, 3) determines the rate and method of payment, and 4) is responsible for maintaining employment records.

5

21.    At all material times, Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206-207.

## V.    FACTS

22.    Defendants operate an adult entertainment club in Georgia, under the name of "Pin Ups."

23.    Plaintiffs worked regularly for Defendants' adult entertainment establishment.

24.    Plaintiff Davis consistently worked at Pin Ups from before November 2016 to May 2019. She generally worked close to 80 hours per week.

25.    Plaintiff Davis typically worked seven shifts a week and worked 10 to 14 hours per shift.

26.    Plaintiff Davis was denied full minimum wage and overtime compensation under the law by Defendants.

27.    As an illustrative example, during at least one workweek in November 2016, and so on every workweek until May 2019 when she left the club, Plaintiff Davis worked for Pin Ups for at least one hour and was not paid the federal minimum wage.

28.    Plaintiff Davis regularly, but at least once during her employment with Defendants, worked over 40 hours in one workweek. During at least one workweek between November 2016 and May 2019, Defendants did not pay Davis the federally mandated overtime wage when she worked over 40 hours in that same week.

29.    Plaintiff Gamble consistently worked at Pin Ups from before August 2016 until February 2020. She generally worked about 40 hours per week. Plaintiff Gamble worked about four to five shifts a week and 8 to 10 hours per shift.

30.    Plaintiff Gamble did not receive compensation for all hours worked during her employment with the club.

31.    During at least one workweek between August 2016 and February 2020, Defendants did not pay Plaintiff Gamble the federally mandated minimum wage. As an illustrative example, starting in the first week of August 2016 that she worked for Defendants as a dancer, and continuing until February 2020, Plaintiff Gamble was not paid a minimum wage.

32.    Plaintiff Mims consistently worked at Pin Ups from November 2015 to December 2019. She generally worked about 35 hours per week.

33.    Plaintiff Mims typically worked five shifts a week and worked about 7 hours per shift.

34.   Plaintiff Mims was denied full minimum wage and overtime compensation under the law by Defendants.

35.   As an illustrative example, during at least one workweek in November 2015, and so on for every workweek until December 2019 when she left the club, Plaintiff Mims worked for Pin Ups for at least one hour and was not paid the federal minimum wage.

36.   At one point, Defendants attempted to pay the dancers a wage. Plaintiffs Gamble and Mims experienced receiving checks sporadically from the club during their employment. The amounts of money were not consistent. The timing of the receipt of money was inconsistent. Sometimes there would be several months in between receiving any money from the Defendants. None of the Plaintiffs were ever informed they would be paid utilizing a tip credit.

37.   For example, Plaintiff Davis remembers being paid about $100 once a month for two months on a cash card.

38.   Plaintiffs Gamble and Mims received checks that appeared to attempt to compensate them according to a tip credit system in 2018 and 2019. Pin Ups gave out $25 checks each week starting around May 2019. This seemingly random amount was not based on actual hours worked and Defendants continued to illegally take a portion of the dancers' tips that went toward running the club.

39.    Similarly, Plaintiff Mims also received some checks from Pin Ups in the beginning of 2018 through June or July of 2018. These checks stopped and then started back up again in May 2019. It is unclear if the club is still paying its dancers a "wage."

40.    Plaintiffs were misclassified by Defendants as independent contractors.

41.    On at least one occasion during the statutory period, Plaintiffs left the club with negative earnings; that is, they made less than what they paid out in fees, tips, and dance earnings confiscated by the club.

42.    Plaintiffs were compensated almost exclusively through tips from Defendants' customers. Defendants often did not pay them anything at all or paid them improperly for hours worked at Pin Ups.

43.    Defendants also required Plaintiffs to share their tips with other non-service employees, including the house mom, DJ, managers, and the security guard.

44.    Defendants also took a portion of the Plaintiffs' tips after the Plaintiffs performed dances for customers. These amounts were not recorded in the club's gross sales receipts and were not distributed back to dancers.

45.    Defendants illegally classified the dancers as independent contractors. However, at all times, Plaintiffs were employees of Defendants.

46.     Defendants hired/fired, issued pay, supervised, directed, disciplined, scheduled and performed all other duties generally associated with that of an employer concerning the dancers.

47.     The following non-exhaustive list further demonstrates the dancers' status as employees:

a.     Defendants make dancers pay a house fee or "bar" fee of up to $100 to work at the premises each shift;

b.     Defendants made the decision not to pay wages or overtime in accordance with applicable wage laws;

c.     Defendants charged Plaintiffs $25 to work in the VIP area of the club;

d.     Defendants unilaterally set the price for the floor dances at $5 per song and Plaintiffs were not allowed to charge more or less;

e.     Defendants provided the Plaintiffs with music, poles, stages, and extensive lighting, and the dancers simply danced;

f.     Defendants hired and fired all employees of the club – the dancers, DJs, bouncers, managers, and others;

g.     Defendants employed Plaintiffs and Collective Members for several months, if not years, at one time;

10

   h. Plaintiffs constituted the workforce without which Defendants could not perform their services;

   i. Plaintiffs' services were integrated into Defendants' operations, i.e. customers came to the club to see Plaintiffs dance.

48. Plaintiffs are not exempt from the minimum wage and overtime requirements under the FLSA.

49. Defendants' method of paying Plaintiffs in violation of the FLSA was willful and not based on a good faith and reasonable belief that their conduct complied with the FLSA.

50. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance with the FLSA. There are multiple federal court opinions finding that this method of compensation is in violation of the FLSA, and therefore, Defendants' conduct is willful.

51. Defendants also exerted control over Plaintiffs by arbitrarily suspending them from work. For example, if a dancer was not ready to work by a certain time or was not dressed according to the managers' and house mom's standards, the dancer would not be allowed to work.

52. Defendants would suspend Plaintiffs from work for weeks at a time and then require them to pay a fine of about $50 to $100 before returning to work.

53.     For example, Plaintiff Davis was suspended from work at least once a year while she worked for Defendants for minor arbitrary rule violations. She was unable to work for periods of about two weeks when she was suspended.

## VI.    FLSA COLLECTIVE ALLEGATIONS

54.     Named Plaintiffs have actual knowledge that the FLSA Collective Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers who worked at Pin Ups.

55.     As such, Plaintiffs have first-hand personal knowledge of the same pay violations at Pin Ups for other dancers. Furthermore, other exotic dancers at Defendants' establishment have shared with Plaintiffs similar pay violation experiences, including wage and tip confiscations, like those described in this Complaint.

56.     Other employees similarly situated to Plaintiffs worked or have worked at Defendants' club but were not paid overtime at the rate of one and one-half times their regular rate when those hours exceeded 40 hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

57.     Plaintiffs bring this lawsuit as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were employed by Defendants as exotic

dancers at any time during the three years prior to the commencement of this action to present.

58.     FLSA Collective Members perform or have performed the same or similar work as Plaintiffs.

59.     FLSA Collective Members are not exempt from receiving pay at the federally mandated minimum wage rate.

60.     FLSA Collective Members are not exempt from receiving overtime compensation.

61.     As such, FLSA Collective Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of minimum wage.

62.     Defendants' failure to properly pay Plaintiffs and those similarly situated for all hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Collective Members.

63.     The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of FLSA Collective Members.

64.     The specific job titles or precise job responsibilities of each FLSA Collective Member do not prevent collective treatment.

65.    All FLSA Collective Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

66.    Although the exact amount of damages may vary among FLSA Collective Members, the damages for the FLSA Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Collective Members.

67.    As such, Plaintiffs bring their FLSA minimum wage claims as a collective action on behalf of the following class:

> **All current and former exotic dancers who worked for Defendants at any time starting three years before the filing of this lawsuit to the present.**

## VII.   UNLAWFUL USE OF THE FLSA TIP CREDIT ALLEGATIONS

68.    The FLSA requires employers to pay their employees the minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C).  However, under 29 U.S.C. § 203(m), an employer may take advantage of the "tip credit" in order to meet the federal minimum wage requirement with respect to "tipped employees." *See* 29 U.S.C. § 203(m)(1)-(2).  Under this tip credit, an employer may pay a tipped employee as little as $2.13 per hour, but only if the employee still makes the minimum wage when the wages paid and the employee's tips combine to equal at

least the minimum wage of $7.25 per hour. In other words, under 29 U.S.C. § 203(m), the employer may claim a credit for an employee's tips to make up the difference between the cash wage of $2.13 per hour the employer pays and the minimum wage the employer owes its employees. *See Ide v. Neighborhood Restaurant Partners, LLC*, 32 F. Supp. 3d 1285, 1292-93 (N.D. Ga. 2014).

69.    Pin Ups apparently attempted to take advantage of the tip credit. However, under the FLSA, an employer cannot take advantage of the tip credit unless it complies with the strict requirements of the statute. *See* 29 C.F.R. § 531.59. First, the employer must inform an employee in advance of its use of tip credit pursuant to the provisions of § 203(m). That is, the employer must inform the employee of (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice. *See* 29 C.F.R. § 531.59.

70.    Pin Ups violated the FLSA in the following respects:

a. **3(m) Violation for failure to inform**: Defendants failed to correctly inform the Plaintiffs of their desire to rely on the tip credit to meet its minimum wage obligations;

b. **3(m) Violation for making illegal deductions from earnings that reduced the direct wage of the dancers below $2.13/hour:** Although Defendants somewhat attempted to pay their dancers a wage at one point, they still required Plaintiffs to pay house fees that amounted to illegal deductions from earnings;

c. **3(m) Violation for unlawful tip-sharing through tip credit violations and the use of an illegal tip pool:** Defendants required dancers to share their tips with other non-tipped employees of the club in violation of the tip credit provisions.

71.    As a result of these violations, Pin Ups has lost its ability to use the tip credit and therefore must compensate its employees at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Pin Ups must account to its employees for the difference between the wages they paid and the minimum wage of $7.25 an hour.

## VIII.  <u>RETALIATION ALLEGATIONS</u>

72.    On July 12, 2019, Plaintiff Gamble's demand letter was sent to Defendants, asserting her rights under the FLSA.

73.    Approximately four months later, on or around November 11, 2019, Plaintiff Gamble was told by Defendants that she could no longer work at Pin Ups because she had a lawsuit against them.

74.    Text messages sent to Plaintiff Gamble from one of Pin Ups' managers, read: "Cary's not going to let you back. Why are you trying to work at a club that

16

you're trying to sue? That makes no sense." "Cary" referred to in the message is Defendant Cary Adams.

75.    Plaintiff Gamble asked again, "So is it okay if I come back?" The manager at Pin Ups responded: "You're involved with a lawsuit, so I'll have to ask Cary tomorrow."

76.    Defendants' intentional and blatant retaliation against Gamble is in direct violation of the FLSA, which expressly prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…" 29 U.S.C. § 215(a)(3).

77.    Where a motivating factor in the termination is an employee's assertion of rights under the FLSA, the termination is discriminatory whether or not other grounds for termination exist. To make a prima facie case of retaliatory discharge, a plaintiff must make a showing of (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)).

78.     In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *Reich v. Davis*, 50 F. 3d 962, 965-66 (11th Cir. 1995).

79.     The language of the text message from Pin Ups' manager could not have been clearer. The reason Plaintiff Gamble was not allowed to return to work was a direct result of her involvement in a potential lawsuit against the club. Thus, Plaintiff Gamble has shown the causal link between her participation in a protected activity under the FLSA and the adverse employment action taken against her.

80.     There is also personal liability under the FLSA, which defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d). An FLSA "employer" includes individuals with "managerial responsibilities" and "substantial control of the terms and conditions of the work of [the] employees." *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Reich v. Circle C. Invs., Inc*., 998 F.2d 324, 329 (5th Cir. 1993). In order to qualify as an employer, an individual officer must either be involved in the day-to-day operations or have some direct responsibility for the supervision of the employee. *Dean v. 1715 Northside Drive, Inc.*, 224 F.Supp.3d 1302, 1314 (N.D. Ga. 2016) (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008). This means that corporate officials and

supervisors may also be individually held liable for retaliation, in addition to the employer entity.

81.     Under the FLSA, "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

82.     Plaintiff Gamble is entitled to reinstatement or front pay, back pay, mental anguish, punitive and liquidated damages in order to effectuate the purposes of the anti-retaliation portion of the FLSA. *See* 29 U.S.C. § 216(b); *Dickson v. United Family Medical Center, Inc.*, 2020 WL 4932284 at *2 (N.D. Ga., 2020).

83.     Finally, the FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *See* 29 U.S.C. § 216(b); *Dickson v. United Family Medical Center, Inc.*, 2020 WL 4932284 at *3 (N.D. Ga., 2020) (affirming attorney's fees award in FLSA case of $23,021.25). Plaintiff seeks reasonable fees and costs.

84.    Defendants' barring Plaintiff Gamble from coming back to work constitutes a retaliatory action in violation of the FLSA because it was taken in direct response to her assertion of workplace rights protected by the FLSA.

85.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff Gamble has suffered a loss of earnings and job benefits, and she has suffered and continues to suffer emotional distress.

## IX.    CAUSES OF ACTION

### COUNT I:
### Failure to Pay Minimum Wages and Wages Due (Collective Action)

86.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

87.    Defendants' willful practice of failing to pay Plaintiffs and FLSA Collective Members at the required minimum wage rate violates the FLSA and was not based in good faith. 29 U.S.C. § 206.

88.    The FLSA required that Defendants allow Plaintiffs and FLSA Collective Members to keep all tips and gratuities received from customers. As set forth above, Defendants failed to pay Plaintiffs and FLSA Collective Members at hourly rates in compliance with the Federal Minimum Wage requirements. Without legal excuse or justification, Defendants kept and/or assigned to other employees

tips and gratuities received by Plaintiffs and FLSA Collective Members and belonging to Plaintiffs and FLSA Collective Members.

89.    As alleged above, Defendants' practices of collecting house fees from the dancers violates the law.

90.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiffs.

91.    Plaintiffs and FLSA Collective Members are entitled to (a) unpaid minimum wages; (b) liquidated damages; (c) interest; and (4) reasonable attorney's fees and costs.

## COUNT II:
## Failure to Pay Overtime Compensation (Collective Action)

92.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

93.    Defendants, individually and collectively, jointly and severally, have violated FLSA § 7, 29 U.S.C. § 207, by failing to pay overtime wages for time that Plaintiffs worked in excess of forty (40) hours in a workweek.

94.    Pursuant to FLSA §16, 29 U.S.C. §216, Plaintiffs bring this lawsuit to recover unpaid wages, overtime wage differential, liquidated damages in an equal amount, attorneys' fees, and the costs of this litigation.

95.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate or the required overtime rate apply to the Plaintiffs.

96.    Plaintiffs and FLSA Collective Members are entitled to (a) unpaid overtime wages; (b) liquidated damages; (c) interest; and (d) reasonable attorney's fees and costs.

## COUNT III:
## Failure to Inform Plaintiffs of Tip Credit Utilization (Collective Action)

97.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

98.    The FLSA requires that Defendants inform Plaintiffs and other similarly situated exotic dancers in advance of their use of the tip credit pursuant to the provisions of 29 U.S.C. § 203(m).

99.    As set forth above, Defendants failed to notify dancers of their desire to rely on the tip credit and did not consistently pay dancers the tipped minimum wage.

100.   Plaintiffs and FLSA Collective Members are entitled to (a) unpaid minimum wages; (b) liquidated damages; (c) interest; and (d) reasonable attorney's fees and costs.

## COUNT IV:
## Illegal Deductions From Earnings (Collective Action)

101.   Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

102.   The FLSA allows employers to pay a tipped employee as little as $2.13 per hour, but only if the employee still makes the minimum wage when the wages paid and the employee's tips combine to equal at least the minimum wage. *Ide v. Neighborhood Restaurant Partners, LLC*, 32 F. Supp.3d 1285, 1293 (N.D. Ga. 2014).

103.   The regulations interpreting the FLSA provide that an employer must pay its employees the minimum wage and overtime "free and clear." *See* 29 C.F.R. § 531.35; *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F.Supp.2d 1295, 1308 (N.D. Ga. 2008).

104.   It is well-established that the minimum wage must be paid to employees fully and unconditionally. In other words, minimum wages must be paid to employees without any requirement that an employee incurs any work-related

expenses on behalf of the employer's business. *See Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1241 (11th Cir. 2002); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F.Supp.2d 1295, 1308 (N.D. Ga. 2008).

105.   As set forth above, Defendants' policies forced the dancers to pay to dance at the club. The practice of charging house fees constitutes an illegal withholding of wages that reduced net income below the statutory minimum.

106.   Plaintiffs and FLSA Collective Members must be reimbursed for the house fees they were required to pay to Defendants, and are further entitled to liquidated damages, interest, and reasonable attorney's fees and costs.

## COUNT V:
## Unlawful Tip Sharing (Tip Credit Violation based on Illegal Tip Pool)
## (Collective Action)

107.   Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

108.   To comply with the requirements of the FLSA tip credit provisions, an employer must allow employees to retain all tips they receive unless the tips are being contributed to a valid tip pool. 29 C.F.R. § 531.59.

109.   As set forth above, Defendants' failure to allow their exotic dancers to retain all their tips by requiring them to "tip out" employees who do not customarily and regularly receive tips violates the Fair Labor Standards Act, 29 U.S.C. § 203(m).

24

Plaintiffs bring this claim on behalf of themselves and all others similarly situated pursuant to 29 U.S.C. § 216(b).

110.   "Any arrangement whereby a tipped employee agrees that part of his or her tips become the property of the employer is inconsistent" with the FLSA's tip credit provisions. *See* DOL Wage & Hour Opinion Letter, 2006 WL 1910966 (June 9, 2006).

111.   Taking tips outside of a valid tip pool, or generally passing onto employees the cost of doing business is illegal under the FLSA.

112.   As set forth above, Defendants' policies required dancers to share tips with the managers, DJs, house moms, and security guards.

113.   Thus, Defendants' practice of requiring Plaintiffs to pay a portion of their earnings to other non-tipped employees of the club violates the FLSA and invalidates Defendants' ability to claim the tip credit.

114.   Defendants' failed attempt at paying the dancers a wage shows that they were aware of the requirements of the FLSA, but intentionally chose to disregard them. Consequently, Defendants' actions were "willful" under the law.

115.   Plaintiffs and FLSA Collective Members are entitled to (a) unpaid minimum wages; (b) liquidated damages; (c) interest; and (d) reasonable attorney's fees and costs.

**COUNT VI:**
**Failure to Maintain Records in Violation of the FLSA**
**(Collective Action)**

116. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

117. Defendants failed to keep adequate records of Plaintiff's and FLSA Collective Members' work hours, pay, and deductions in violation of the FLSA. 29 U.S.C. § 211(c).

118. Federal law mandates that an employer is obligated to maintain three (3) years of payroll records and other records containing, among other things, the following information, pursuant to 29 C.F.R. §§ 516.2 and 516.5:

a.   The time of day and day of the week an employee's work begins;

b.   The regular hourly rate of pay for any workweek in which overtime compensation is due under 29 U.S.C. § 207(a);

c.   An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.   The amount and nature of each payment, which, pursuant to 29 U.S.C. § 207(e) of the FLSA is excluded from the regular rate;

e.   The hours worked each workday and the total hours worked each workweek;

26

f.    The total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium and overtime compensation;

g.    The total premium for overtime hours;

h.    The total additions to or deductions from wages paid each pay period;

i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.    The total wages paid each pay period;

k.    The date of payment and the pay period covered by the payment.

119.    Plaintiffs have not asserted this violation as a claim for affirmative relief, but merely to inform Defendants that Plaintiffs will be seeking to meet their burden under the FLSA by producing sufficient evidence to show the amount and extent of work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery, Co.*, 328 U.S. 680, 687 (1946).

## COUNT VII:
## Retaliatory Termination in Violation of the FLSA (Individual Claim)

120.   Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

121.   The FLSA applied to Plaintiffs' employment with Defendants at all times relevant herein.

122.   Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits retaliation against an employee because she "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the rights contained in the FLSA.

123.   As stated above, a demand letter was sent to the club on behalf of Plaintiff Gamble on July 12, 2019.

124.   Plaintiff Gamble sought to work at Pin Ups on or around November 11, 2019. As a direct result of asserting her rights under the FLSA, Defendants, through the club manager, terminated Plaintiff Gamble and would no longer allow her to work at Pin Ups.

125.   Defendants' termination of Plaintiff Gamble constituted a retaliatory action and violation of the FLSA, undertaken in direct response to Plaintiff Gamble's assertion of workplace rights protected by the FLSA.

126.   As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff Gamble has suffered a loss of earnings and job benefits, and she has suffered and continues to suffer emotional distress.

127.   Plaintiff Gamble is entitled to lost earnings and benefits, liquidated damages, compensatory damages, interest, and reasonable attorney's fees and costs.

## X.    PRAYER FOR RELIEF AND DAMAGES AND RELIEF SOUGHT

128.   Plaintiffs and FLSA Collective Members are entitled to recover compensation for the hours worked for which they were not paid at the mandated minimum wage rate.

129.   Plaintiffs and FLSA Collective Members are entitled to recover compensation for the hours they worked over 40 in a workweek for which they were not paid at the mandated overtime wage rate under federal law.

130.   Plaintiffs and FLSA Collective Members are also entitled to all of the misappropriated funds, including house fees, tips taken from them, tips taken from dance performances, and any additional wages owed.

131.   Plaintiffs are also entitled to an amount equal to all of their unpaid wages and misappropriated funds as liquidated damages. 29 U.S.C. § 216(b).

132.   An award of attorneys' fees and costs under the FLSA.

133.   Plaintiff Gamble, individually, is entitled to recover lost wages and benefits due to her, mental anguish damages, compensatory damages, attorney's fees, and liquidated damages equal in amount to the unpaid compensation found due to Plaintiff for Defendants' retaliatory discharge of Plaintiff in violation of Section 215(a)(3).

134.   For these reasons, Plaintiffs respectfully request that judgment be entered in their favor awarding the damages requested above. Plaintiffs also request such other and further relief to which Plaintiffs and FLSA Collective Members may be entitled, at law or in equity.

## JURY DEMAND

135.   Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demand trial by jury.

Respectfully submitted, this 30th day of December 2020.

By: */s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Michael D. Forrest
Georgia Bar No. 974300
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

AND

HODGES & FOTY, L.L.P.

David W. Hodges **Seeking pro hac vice-
admission**
Texas Bar No. 00796765
dghodges@hftrialfirm.com
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEYS FOR PLAINTIFFS