## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TALIA DAVIS, YUTASHIA GAMBLE, and PAMELA MIMS, on Behalf of Themselves and on Behalf of All Others Similarly Situated,** | § § § § § § | **Case No. 1:20-cv-5272-SCJ** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **THE GREAT AMERICAN DREAM, INC. d/b/a PIN UPS, CARY ADAMS and JAMES W. LEE, SR. individually,** | § § § § § | |
| **Defendants.** | § | |

## JOINT MOTION TO APPROVE SETTLEMENT

COMES NOW the Plaintiffs Talia Davis, Yutashia Gamble, and Pamela Mims ("Plaintiffs") and the Defendants The Great American Dream, Inc. d/b/a Pin Ups, Cary Adams, and James W. Lee, Sr. ("Defendants") (collectively, the "Parties"), and jointly move for the Court to approve the Parties' Settlement Agreement (submitted concurrently herein for *in camera* review), which represents a resolution of a disputed matter under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* In support of this Joint Motion, the Parties state as follows:

## <u>INTRODUCTION</u>

Plaintiffs initiated this civil action as a FLSA collective action against Defendants alleging that Defendants misclassified them as independent contractors and thereby failed to pay them minimum wages and other remuneration owed under the FLSA. *See* Dkt. 1. After Plaintiffs filed suit, four additional plaintiffs joined the collective action pursuant to 29 U.S.C. § 216(b). *See* Dkt. 6. Defendants answered the lawsuit, denied liability, and asserted various affirmative defenses. *See* Dkt. 18. Defendants also moved to dismiss, claiming the Plaintiffs' claims were subject to an arbitration agreement. *See* Dkt. 17.

The Parties thereafter conferred about the motion to dismiss and Plaintiffs consented to pursue their claims in arbitration. Plaintiffs filed an unopposed motion to stay the proceedings pending resolution of the arbitration. *See* Dkt. 19. The Court granted Plaintiffs' unopposed motion to stay, and on April 7, 2021 entered an order staying the case pending the results of arbitration. *See* Dkt. 20.

The Plaintiffs and Opt-in Plaintiffs thereafter initiated arbitration proceedings with the American Arbitration Association (AAA) in September 2021 and the parties conducted arbitration proceedings, including initiating written discovery. The Parties also informally exchanged information and documents regarding the Plaintiffs' and Opt-in Plaintiffs' claims.

In early 2022, the Parties selected a mediator, Daniel Klein with Klein Dispute Resolution and attended mediation with Mr. Klein on May 17, 2022. The Parties did not initially come to a resolution on that day but made progress toward that end. With the continued assistance of Mr. Klein over the next several months, the Parties came to an agreement to resolve the FLSA claims of the Plaintiffs and Opt-in Plaintiffs. The Parties then spent several more months finalizing and coming to an agreement over the terms of a formal written settlement agreement (the "Agreement"), which is being submitted separately for *in camera* review and is incorporated herein by reference.

The Parties recognize and acknowledge the expense in time and money of litigation, the uncertainty and risk of litigation, as well as the difficulties and delays inherent in such litigation, which makes settlement of this matter a mutually appealing resolution.

Pursuant to applicable Eleventh Circuit precedent, this Court is empowered to review and approve the provisions of such settlement agreements in actions brought for back wages under the FLSA. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). Because the Parties have agreed that the terms reflected in the Agreement are mutually satisfactory and that they represent a fair and reasonable resolution of a bona fide dispute, the Parties respectfully request that the Court approve the Agreement.

In support of this motion, Plaintiffs submit that they are satisfied that they will be reasonably and adequately compensated under the terms of the Agreement for the alleged unpaid wages to which they contend to be entitled. Additionally, Plaintiffs' Counsel represents that: (a) Plaintiffs understand the Agreement, and (b) Plaintiffs have consulted with their counsel of record before submitting the attached Agreement to this Court and have entered into it knowingly and voluntarily.

WHEREFORE, the Parties respectfully request the Court approve the Agreement as a fair and reasonable compromise of disputed issues under the FLSA.

## MEMORANDUM OF LAW

### A.    Legal Standard.

Employees can settle and release claims under the FLSA in two ways. First, employees can settle and waive their FLSA claims with supervision and oversight by the Department of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores*, 679 F.2d at 1353. Second, in the context of a private lawsuit brought by an employee against an employer under the FLSA (as is the case here), an employee may settle and release FLSA claims if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353; *see also D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n. 8 (1946) (discussing propriety of allowing settlement

of FLSA claims where district court has reviewed the terms of the settlement

agreement).

In detailing the circumstances justifying court approval of an FLSA settlement

in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit
> brought by employees under the FLSA for back wages
> because initiation of the action by the employees provides
> some assurance of an adversarial context. The employees
> are likely to be represented by an attorney who can protect
> their rights under the statute. Thus, when the parties
> submit a settlement to the court for approval, the
> settlement is more likely to reflect a reasonable
> compromise of disputed issues than a mere waiver of
> statutory rights brought by an employer's overreaching. If
> a settlement in an employee FLSA suit does reflect a
> reasonable compromise over issues, such as FLSA
> coverage or computation of back wages that are actually
> in dispute, we allow the district court to approve the
> settlement in order to promote the policy of encouraging
> settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354.

## B.    The Agreement resolves a bona fide dispute over FLSA coverage in a fair and reasonable manner, and should therefore be approved.

The Court here should approve the Parties' Settlement Agreement to resolve

the FLSA claims against Defendants. The proposed Agreement arises out of an

action that was adversarial in nature. The Parties disputed the merits of the case, with

Plaintiffs contending that Defendants violated the FLSA by misclassifying them as

independent contractors, and Defendants disputing Plaintiffs' allegations and

computation of potential damages. During the litigation, mediation, and settlement of this action, both sides were represented by competent and experienced attorneys who are well-versed in this area of wage-and-hour laws. The Plaintiffs and their counsel discussed their claims and potential risks of proving liability, damages, and willfulness, and the Parties formulated their own proposed settlement figures. Defendants provided information about the days worked by Plaintiffs to allow for a reasonable analyses of the Plaintiffs' potential damages. The Parties then engaged in settlement discussions with the assistance of an experienced and competent mediator, Daniel Klein, who assisted the Parties with continued discussions and negotiations over a period of several months.

The Agreement provides Plaintiffs and Opt-in Plaintiffs with a reasonable and appropriate recovery of the claimed unpaid wages and liquidated damages sought in this Action, and a payment of attorneys' fees and costs to their counsel for prosecuting this matter; as such, it represents a fair and reasonable compromise of this matter. The Plaintiff with the lowest net settlement award would receive $6,546.77, the Plaintiff with the highest net settlement award would receive $36,076.99, and the average net settlement award to each Plaintiff would be $21,099.95. The individual settlement distributions were calculated based on each Plaintiffs' damages calculations based on the number of weeks, days, and hours worked for each Plaintiff.

Because the Agreement represents a fair and reasonable compromise over bona fide FLSA wage disputes and was negotiated at arms' length with the assistance of a seasoned and well-respected mediator, the Court should approve this settlement.

**C.    The Settlement terms were reached as a result of arm's-length negotiations and are fair and reasonable.**

Plaintiffs worked for Defendants as exotic dancers at Defendants' adult cabaret establishment. Plaintiffs contend that Defendants misclassified them as independent contractors, rather than classifying them as employees under the FLSA, thereby failing to pay Plaintiffs wages. Plaintiffs further allege that they had to pay out of pocket to work for Defendants in the form of house fees, dance fees, tip-outs, and other monies they were required to pay to work for Defendants. Defendants deny that their classification of Plaintiffs as independent contractors was improper, and contend they do not owe any wages or other remuneration to Plaintiffs.

Following an informal exchange of information about the weeks worked and written policies applicable to the Plaintiffs, the Parties engaged with mediator Daniel Klein to negotiate potential resolution. Throughout settlement negotiations (which lasted several months), the Parties discussed the strengths and weaknesses of their respective positions as well as the risks that expensive protracted arbitration proceedings would pose. The Parties both recognized the inherent risks with continued litigation. Plaintiffs believe the amounts they will receive pursuant to the

Agreement reflect a fair and reasonable compromise of their FLSA claims, especially given the lack of timekeeping records that would require both sides to put forth testimonial evidence of the days and hours worked by Plaintiffs. While still denying liability, Defendants believe the amount Plaintiffs will receive pursuant to the Agreement reflects complete and total satisfaction of any unpaid wages the Plaintiffs could expect to recover if each were to prevail on their FLSA claims at a final arbitration hearing.

Plaintiffs' Counsel estimated each Plaintiffs' likely best-day-in-court damages using the Plaintiffs' estimated number of days worked, hours worked, and amounts paid in fees/tip-outs. Under the terms of the settlement, each Plaintiff is receiving an amount that is nearly all of their estimated minimum wages owed (ranging from 65% of estimated minimum wages owed upward of 99.6% of estimated minimum wages owed). Given that each Plaintiffs' minimum wage damages estimation was based on their recollection and estimated number of days worked, such recovery is reasonable where it would be difficult to prove such damages with specificity.

Pursuant to the terms of the Agreement, Defendants are to tender payment as follows: $100,000 to be paid on or before December 31, 2022, with quarterly payments of at least $12,500 thereafter until the global settlement fund is paid in full. As consideration for the payment plan, the Parties have agreed that interest will

accrue at a rate of 7.5% annually after March 1, 2023 on the remaining balance. If Defendants pay the entire settlement amount on or before December 1, 2023, Plaintiffs have agreed to waive the interest. If Defendants tender the minimum quarterly payments, the settlement is scheduled to be completely funded by December 1, 2025.

In reaching agreement on this payment plan, the Parties considered the underlying risks of continued litigation, costs of litigating the cases and paying arbitration fees on seven separate arbitration proceedings, and the potential that prolonged litigation would make recovery at the conclusion of the cases difficult or potentially untenable (*i.e.*, that even if Plaintiffs were successful at a final hearing in arbitration, the funds spent by Defendants to defend against the claims and pay arbitration fees would have depleted the amounts available for Plaintiffs to recover). The agreed upon payment plan guarantees payments to the Plaintiffs, adds interest to account for the extended payout, and makes sure the Plaintiffs are compensated properly for their claims.

The Parties also agreed that, in the event Defendants defaulted on the payment plan and do not reasonably and timely cure such default after appropriate notice was provided to Defendants, that Plaintiffs would be entitled to enter and/or seek enforcement of an agreed final judgment by submission of affidavit/declaration attesting to the default. Such agreed judgment would operate as a decision on the

merits of Plaintiffs' claims and would entitle Plaintiffs to their entire settlement amounts due and owing (plus interest accrued to date), plus an additional $50,000 in liquidated damages. The Parties agreed that this provision would encourage Defendants to stay current on their payments and avoid default.

The Agreement does not contain a confidentiality provision, nor does it contain a general release of claims. The release contained in the Agreement is limited to Plaintiffs' FLSA and related wage-and-hour claims. There is a mutual non-disparagement provision that would require the Parties not to disparage each other or to make statements that reflect negatively on each other. Such non-disparagement provision defines "disparagement" in such a way that "[i]t shall not be considered disparagement for Plaintiffs to inform others that they resolved their FLSA lawsuit against Defendants by way of settlement[,]" but otherwise would prevent Plaintiffs from publicizing or informing others (besides immediate family members and legal, financial, and tax professionals) the substance and negotiations of the lawsuit or the settlement. As such, the non-disparagement provision is reasonably tailored and

In total, the terms of the Agreement are fair and reasonable, and should be approved.

**D.      Plaintiffs' requested attorneys' fees and costs are reasonable.[1]**

---

[1]   Defendants do not join in this section but do not oppose Plaintiffs' request for fees and costs as described in the Agreement.

If approved, the Agreement provides that Plaintiffs' Counsel be awarded $98,466.42 in attorneys' fees and $3,833.95 in litigation costs. Courts evaluate the reasonableness of attorney's fees using the "lodestar approach." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Walker v. Iron Sushi, LLC*, 752 Fed. Appx. 910, 912-16 (11th Cir. 2018) (per curiam). To calculate a lodestar figure, the Court multiplies "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Counsel seeking fees bears the burden of producing evidence of his hourly rate and time spent on the litigation. *Norman*, 836 F.2d at 1303.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community" for services provided by "lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. Plaintiffs' Counsel sets its base billing rates based on the Laffey Matrix. *See* Declaration of David Hodges. "The Laffey Matrix reflects rates for civil attorneys trying federal cases across the United States rather than the prevailing market rates in the relevant legal community." *Carey v. Hannah, Kendrix, Zachary & Assocs., LLC*, No. 1:11-CV-01782-SCJ-AJB, 2012 WL 13133676, at *11 and n. 13 (N.D. Ga. Dec. 21, 2012) (internal quotation marks omitted) (finding "that the Laffey Matrix supports the reasonableness of the hourly rates requested" and noting that the court previously used the Laffey Matrix in recommending reasonable attorney fee rates in an FDCPA case in *Frazier v.*

*Absolute Collection Serv.*, 767 F. Supp. 2d 1354, 1367 (N.D. Ga. 2011), *adopted by* 2013 WL 12382308 (Jan. 11, 2013)). In setting the billing rates requested herein, Plaintiff's Counsel adjusted the Laffey Matrix fees to account for the annual compensation for attorneys in the Atlanta metropolitan area where venue for this suit is located. *See* Hodges Decl.

Under the Laffey Matrix for June 2022 to May 2023, the reasonable billing rate for a paralegal/law clerk is $225 per hour, the reasonable billing rate for an attorney with 1-3 years of experience is $413 per hour, the reasonable billing rate for an attorney with 4-7 years of experience is $508 per hour, the reasonable billing rate for an attorney with 8-10 years of experience is $733 per hour, and the reasonable billing rate for attorneys with 20+ years experience is $997 per hour. *See* http://laffeymatrix.com/see.html (last visited Nov. 22, 2022).

In May 2021, the mean compensation for an attorney in the Washington-Arlington-Alexandria, DC-VA-MD-WV metro area (which is the locale where the Laffey Matric bases its fee calculations) was $186,610 per year. See https://www.bls.gov/oes/current/oes231011.htm (last visited Nov. 22, 2022). By comparison, the mean compensation for an attorney in the Atlanta-Sandy Springs-Roswell, Georgia metro area was $144,380 per year. *Id*. Therefore, attorneys in the Atlanta metro area generally make 77.4% of the compensation of attorneys in the Washington, D.C. area. As such, adjusting the Laffey Matrix rate downward by

22.6% to account for that difference in mean attorney compensation, the reasonable

rates would be as follows:

| Years Experience | Laffey Rate | Downward Adjustment | Adjusted Rate for Atlanta Metro |
|---|---|---|---|
| Paralegal / Law Clerk | $225 | 0.773699 | $174.08 |
| 1-3 Years | $ 413 | 0.773699 | $ 319.53 |
| 4-7 Years | $ 508 | 0.773699 | $ 393.04 |
| 8-10 Years | $ 733 | 0.773699 | $ 567.12 |
| 20+ years | $ 997 | 0.773699 | $ 771.38 |

Plaintiffs request the Court approve these adjusted rates as reasonable in this

matter for purposes of approving the settlement. *See Edwards v. Niagara Credit*

*Solutions*, No. 1:07-CV-2396-BBM, 2009 U.S. Dist. LEXIS 153174, at *5 (N.D.

Ga. Feb. 9, 2009) (finding attorney billing rates reasonable and noting that "the

requested rates are below the hourly rates computed under the Laffey Matrix and

adjusted for locality.").

With regards to a reasonable number of hours, fee applicants must exercise

"billing judgment." *Norman*, 836 F.2d at 1301. This means that a reasonable number

of hours "cannot include 'those that would be unreasonable to bill to a client and

therefore to one's adversary irrespective of the skill, reputation, or experience of

counsel.'" *Frazier v. Wurth Indus. of N. Am., LLC*, No. 1:08-cv-01634-JOF, 2009

WL 3277635, at *2 (N.D. Ga. Oct. 7, 2009) (quoting *Norman*, 836 F.2d at 1301).

Here, after exercising billing judgment, Plaintiffs' Counsel incurred 242.9 hours in

billing time on the present case from inception through the preparation of this

Motion. *See* Declaration of David Hodges. Plaintiffs' Counsel exercised billing judgment by voluntarily reducing attorney billing time on various tasks that counsel reasonably concluded would be subject to judicial reduction, and by foregoing seeking the vast majority of fees for the work performed by managing partner David Hodges, who bills at a higher hourly rate. *Id.* (Mr. Hodges is only seeking fees for 1.0 hour, spent reviewing and revising the original complaint).

Utilizing the adjusted Laffey Matrix billing rates, Plaintiffs' Counsel estimates its lodestar fee award would be approximately $86,469.39. *See* Hodges Decl. Local Counsel's lodestar was $2,992.50. *Id.* The attorneys' fees and costs to be awarded under the Agreement would represent a lodestar multiplier of 1.18.[2] "[B]ecause the lodestar is being used here as a cross-check, the requirements for precision (including with respect to any multiplier) are less stringent." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *30 n. 5 (W.D. Pa. Oct. 22, 2019). A multiplier cross-check of 1.18 is within the range of reasonableness approved by other courts in similar cases. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 4 Newberg on

---

[2]   ($98,466.42 in fees + $3,833.95 in costs) / ($79,642.94 + $2,992.50 + $3,833.95) = 1.18308.

Class Actions § 14.7)); *Brown v. Progressions Behavioral Health Servs.*, No. 16-6054, 2017 U.S. Dist. LEXIS 108487, at *17-18 (E.D. Pa. July 13, 2017) ("A multiplier of 3.1 falls within the range of generally approved common fund cases." (citing cases)); *Acevedo v. Workfit Medical, LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016) (in FLSA collective action, endorsing lodestar multiplier of 1.3); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (approving lodestar multiplier of 5.3 in FLSA collective action); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05-CV-00187, 2007 U.S. Dist. LEXIS 2392, at *9-10 (M.D.N.C. Jan. 10, 2007) (using lodestar cross-check and approving multiplier of 1.6 times above the lodestar amount, noting "[t]his is a modest risk multiplier. The close association between the percentage fee [as called for in the settlement agreement] and the fee one would expect from a lodestar analysis tends to confirm the reasonableness of the percentage fee requested by Class counsel.").

## CONCLUSION

The Parties represent that they have reached a reasonable and fair resolution of Plaintiffs' FLSA claims. The Parties represent that they engaged in a good faith, arm's-length negotiations with the aid of a qualified and experienced mediator, Daniel Klein, to resolve the matter. The record indicates that a bona fide dispute exists regarding Defendants' classification of Plaintiffs as independent contractors and the potential wages owed to Plaintiffs if they were successful in their claims.

The Agreement is contingent upon the Court's approval, and the Parties respectfully request the Court approve the proposed settlement.

Respectfully submitted, this 9th day of December 2022.

By:  */s/ David W. Hodges*
David W. Hodges (*Pro Hac Vice*)
Texas Bar No. 00796765
HODGES & FOTY, LLP
dhodges@hftrialfirm.com
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

-and-

Justin M. Scott
Georgia Bar No. 557463
Michael D. Forrest
Georgia Bar No. 974300
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

ATTORNEYS FOR PLAINTIFFS

By:  */s/ Kenneth I. Sokolov*
(with permission)
Kenneth I. Sokolov
Georgia Bar No. 666460
SMITH & LISS, LLC
Five Concourse Parkway, Suite 2600
Atlanta, Georgia 30328
Telephone: 404.760.6000
Facsimile: 404.760.0225
ksokolov@smithliss.com

COUNSEL FOR DEFENDANTS