# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and among (i) Talia Davis ("Davis"), (ii) Pamela Mims ("Mims"), (iii) Yutashia Gamble ("Gamble"), (iv) Lena Harris ("Harris"), (v) Tanesha Dedier ("Dedier"), (vi) Kiara Sledge ("Sledge"), and (vii) Telia Wright ("Wright") (collectively, the "Plaintiffs") and (viii) The Great American Dream, Inc. (the "Club"), (ix) Cary Adams, and (x) James W. Lee ("Pin Ups" or "Defendants"). Defendants and Plaintiffs are referred to collectively as the "Parties" and individually as a "Party."

WHEREAS, Plaintiffs claim to have been formerly employed by the Club and/or Defendants in an employer-employee relationship and not as independent contractors;

WHEREAS, Plaintiffs have asserted a right to payment for wages, including minimum wages, overtime wages, and other monies from Defendants related to or in connection with their alleged employment (the "Claim");

WHEREAS, Plaintiffs Davis, Gamble, and Mims, in their individual capacities and on behalf of all others similarly situated, commenced a collective action against Defendants in the United States District Court for the Northern District of Georgia, where it was designated Civil Action No. 1:20-cv-05272-SCJ (the "Lawsuit") alleging claims, including claims under the Fair Labor Standards Act ("FLSA"), for unpaid wages and remuneration;

WHEREAS, Plaintiffs Harris, Dedier, Sledge, and Wright joined the Lawsuit as party plaintiffs pursuant to 29 U.S.C. § 216(b), and in so doing expressly authorized Plaintiffs Davis, Gamble, and Mims to make decisions on their behalf concerning the litigation, including negotiating a resolution of their claims;

WHEREAS, the Parties, after Defendants' filing of a motion to compel arbitration, thereafter voluntarily stipulated to attend arbitration with the American Arbitration Association;

WHEREAS, following initiation of arbitration proceedings, the Parties have engaged in good faith, arm's length settlement negotiations with the assistance of mediator Daniel Klein with Klein Dispute Resolution;

WHEREAS, following such good faith and arm's length negotiations, and through continued negotiations with the assistance, facilitation, and mediation of Mr. Klein, the Parties to this Agreement wish to (i) settle and compromise their disputes and differences, whether known or unknown, asserted or unasserted, and (ii) provide for the dismissal with prejudice of Plaintiffs' FLSA and related wage claims;

WHEREAS, unless as otherwise provided by law, this settlement will not operate to resolve, waive, release, or dismiss the remaining claims of the other potential collective members that have not joined the Lawsuit, are named in this Agreement, or otherwise have not asserted their individual claims against Defendants;

WHEREAS, this Agreement is executed in conjunction with the settlement of the Lawsuit, and the scope of this Agreement only encompasses claims (other than claims asserted on behalf of the putative collective members) that were specifically asserted by Plaintiffs in the Lawsuit, as

well as Plaintiffs' unpled potential individual claims that could have been asserted based on the facts alleged in the Lawsuit;

WHEREAS, for the limited purpose of facilitating execution of this Agreement, the Parties agree to appoint Plaintiff Davis as the class representative of the Plaintiffs; and

NOW, THEREFORE, in consideration of the mutual promises set forth below, and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the Parties agree as follows:

<u>TERMS</u>

1.    <u>Effective Date</u>.  This Agreement shall become effective ("Effective Date") on the date that (a) all of the Parties have signed this agreement, and (b) an Arbitrator or a Court presiding over the Lawsuit has approved the principal terms of this Agreement.

a.    <u>Payment</u>.  The Parties have agreed to a settlement in the total gross amount[1] of Two Hundred Fifty Thousand and 00/100 dollars ($250,000.00) (the "Gross Settlement Amount"), which includes full compensation of alleged unpaid overtime wages, liquidated damages, and attorneys' fees and costs. Of that Gross Settlement Amount, total payment to each Plaintiff and Plaintiff's Counsel shall be apportioned as follows:

i)    Seventy Three Thousand Eight Hundred Forty Nine and 81/100 dollars ($73,849.81) is apportioned to Plaintiffs as unpaid wages, for which Defendants will issue a W-2 for each of the seven Plaintiffs and will withhold applicable payroll taxes and other required withholdings.

ii)   Seventy Three Thousand Eight Hundred Forty Nine and 82/100 dollars ($73,849.82) is apportioned to Plaintiffs as liquidated damages and interest, for which Plaintiffs will be responsible for paying any income taxes.

iii)  One Hundred Two Thousand Three Hundred and 37/100 dollars ($102,300.37) is apportioned as attorneys' fees and costs to be made payable directly to Plaintiffs' counsel.

b.    Defendants will pay the Gross Settlement Amount listed above, plus any applicable interest as called for in the payment schedule, in separate checks in accordance with the payment schedule discussed in Section 5. Defendants shall timely make the scheduled payments payable to "Hodges & Foty, LLP for the benefit of Talia Davis, (ii) Pamela Mims, (iii) Yutashia Gamble, (iv) Lena Harris, (v) Tanesha Dedier, Kiara Sledge, and (vii) Telia Wright." All checks shall be delivered in accordance with the payment schedule discussed below in Section 5 to the attention of William Hogg, HODGES & FOTY, LLP, P.O. Box 66423, Houston, TX 77266.

---

[1]    Before applying interest.

2.      Released Parties and Released Claims.

a.      Except for claims to enforce this Agreement, Plaintiffs voluntarily, knowingly, and intentionally release and discharge Defendants and their predecessors, successors, parents, subsidiaries, insurers, and specified affiliates/assigns (in conjunction with Section 8 below) and each of their respective officers, directors, principals, shareholders, agents, attorneys, board members, and employees (the "Released Parties") from any and all claims, actions, liabilities, demands, rights, damages, costs, expenses, and attorneys' fees (including, but not limited to, any claim of entitlement for attorneys' fees under any contract, statute, or rule of law allowing a prevailing party or plaintiff to recover attorneys' fees), of every kind and description, relating to Plaintiffs' hours, pay, and compensation, and/or any wage-and-hour claims that could have been asserted based on the facts alleged in the Complaint, arising prior to the Effective Date (the "Released Claims"). Defendants likewise agree to release Plaintiffs from any and all claims that Defendants may have, whether known or unknown, against Plaintiffs through the effective date of this Agreement.

b.      The Released Claims include those which arise out of, relate to, or are based upon:  (i) the rate and payment of wages in connection with each Plaintiff's provision of services to Defendants or the termination thereof, (ii) statements, acts, or omissions by the Released Parties whether in their individual or representative capacities relating to each Plaintiff's hours, pay, and compensation, (iii) express or implied agreements between any Plaintiff and the Released Parties relating to each Plaintiff's hours, pay, and compensation, (v) all federal, state, and municipal statutes, ordinances, and regulations relating to each Plaintiff's hours, pay, and compensation, and (vii) any claim which was or could have been raised by any Plaintiff based on the facts alleged in the Lawsuit.

3.      Unknown Facts.  This Agreement includes employment claims of every nature and kind, known or unknown, suspected or unsuspected, within the scope of the Agreement, up to and including the dates on which each Party executes this Agreement. The Parties acknowledge they may hereafter discover facts different from, or in addition to, those which they now know to be or believe to be true with respect to the Agreement, and the Parties agree this Agreement and the releases contained herein shall be and remain effective in all respects, notwithstanding such different or additional facts or the discovery thereof.

4.      No Admission of Liability.  The Parties agree that nothing contained herein, and no action taken by any Party hereto with regard to the Agreement, shall be construed as an admission by any Party of liability for any purpose whatsoever.

5.      Payment Schedule and Case Closure.  The Parties agree that Defendants shall pay the Gross Settlement Amount apportioned as discussed above in Section 1.a as follows:

a.      Upon the Arbitrator or a court of competent jurisdiction entering an order approving this Agreement, the Parties will jointly request the court stay and/or administratively close the action during the pendency of the payment schedule and completion date.

b.      Defendants shall pay One Hundred Thousand and 00/100 dollars ($100,000.00) on or before December 31, 2022;

- 3 -

c. Defendants shall pay the remainder of the Gross Settlement Amount on a quarterly basis in equal payments, subject to simple interest at a rate of 7.5% APR over the course of the payment plan as outlined in Exhibit A attached hereto. The total of each quarterly payment shall be equal to at least Twelve Thousand Five Hundred and 00/100 dollars ($12,500.00).[2] Defendants shall make the first quarterly payment by no later than March 1, 2023, and shall make each payment thereafter in accordance with the payment plan as outlined in Exhibit A until the payment is complete. Defendants may pay off the Gross Settlement Amount early with no additional penalty for early payment. In the event Defendants pay off the Gross Settlement Amount in full before December 30, 2023, Plaintiffs agree that all interest accrued will be waived, forgiven, and/or discharged.

d. The minimum payment schedule, interest, and amortization schedule agreed upon between the Parties is reflected in the addendum attached herein as Exhibit A. The Parties agree that this payment schedule and the terms described herein are fair and reasonable.

e. Within five (5) business days of the final payment of the Gross Settlement Amount in accordance with the payment schedule and distribution as reflected in Exhibit A, the Parties will file a Joint Stipulation of Dismissal with Prejudice.

6.   Breach.  In the event that Defendants fail to make timely and/or complete payments in accordance with the payment schedule as discussed in Section 5, and after expiration of seven (7) business days from Defendants' receipt of written notice of default, which written notice shall be made by email transmission to each of the following addresses xmarks@gmail.com, afowler@theamericanvisionary.com, and ksokolov@smithliss.com providing defendants with opportunity to cure default by depositing in the mail or sending via email within such seven day period, and directed to the address specified in the notice, the amount specified in the notice of default, the Parties agree that Plaintiffs shall be entitled to enter and/or seek to enforce an agreed final judgment by submission of affidavit/declaration attesting to the default and proposed final judgment to the court in the lawsuit. Such agreed judgment shall operate as a decision on the merits and shall entitle Plaintiffs to their entire settlement amounts due and owing (plus interest accrued to date), plus an additional $50,000.00 as liquidated damages. Defendants shall receive a copy of such affidavit/declaration and proposed judgment contemporaneous with submission of any judgment to the Court, via email transmission to Defendants at the email addresses for Defendants, specified above.

7.   Warranties.  Plaintiffs warrant and represent as follows:

a. Plaintiffs have read this Agreement and agree to the conditions and obligations set forth in it;

b. Plaintiffs have had reasonable time to consider the terms of this Agreement, have had the opportunity to seek legal counsel, and, in fact, have obtained counsel with respect to this Agreement;

c. Plaintiffs voluntarily execute this Agreement after having had full opportunity to consult with legal counsel and without being pressured or influenced by any

---

[2]   Before interest.

- 4 -

statement or representation of any person acting on behalf of the Released Parties;

       d.     Plaintiffs have not relied on any representation, either express or implied, either by statement or omission, by the Released Parties or their agents in deciding to enter into this Agreement;

       e.     Plaintiffs have full and complete legal capacity to enter into this Agreement;

       f.     Plaintiffs are not aware of any other claims or lawsuits filed or currently pending against any of the Released Parties;

       g.     As of the date of this Agreement, Plaintiffs have not assigned Plaintiffs' rights under this Agreement; and

       h.     Plaintiffs admit, acknowledge, and agree that upon receipt of the payments required pursuant to this Agreement, Plaintiffs have received payment for all wages, compensation, bonuses, commissions, liquidated damages, vacation, stock, stock options, or other benefits from Defendant or the Released Parties that are or could be due to Plaintiffs for any reason whatsoever related to their claims for unpaid wages based on the facts asserted in the Lawsuit.

     8.   <u>Mutual Non-Disparagement and Neutral Reference</u>.  Plaintiffs agree not to make to any person any statement that disparages Defendants or reflects negatively on Defendants, including, but not limited to, statements regarding Defendants' financial condition, employment practices, or officers, directors, board members, committee members, employees, successors, affiliates, attorneys-in-fact, or agents. It shall not be considered disparagement for the purposes of this section for Plaintiffs to inform others of the fact that they filed and/or pursued a lawsuit against Defendants under the FLSA, nor shall it be considered disparagement for Plaintiffs to inform others that they resolved their FLSA lawsuit against Defendants by way of settlement. Plaintiffs agree not to share with any person besides their immediate family members and their legal, financial, and tax professionals the substance and negotiations of the Lawsuit or the settlement. Defendants likewise agree not to make to any person any statement that disparages Plaintiffs or reflect negatively on Plaintiffs. To the extent that Defendants are contacted by a prospective employer for any Plaintiff or any other person or entity that wishes to enter into a working relationship with Plaintiffs, Defendants' comments to such prospective employer or other person or entity will be limited to confirming that the respective Plaintiff worked with Defendants, the applicable time frame of the working relationship, and will otherwise include only a neutral statement. Defendants shall not discourage or dissuade a prospective employer from hiring any Plaintiff and shall not inform the prospective employer that such Plaintiff has participated in the Lawsuit. The Parties agree that damages for violations of this Section are difficult to calculate, and hereby agree that if either party violates this Non-Disparagement provision that such violating party will owe the other party Two-Thousand Five Hundred Dollars ($2,500) as liquidated damages for each separate communication that violates this provision.

     9.   <u>Assignment/Affiliates</u>.  No assignment of the rights or obligations in this Agreement will be permitted unless it is in writing and signed by the Parties. Any "affiliates" that Defendants intend to be covered under this Release besides Defendants' own employees, owners, officers, managers, supervisors, officers, and agents as described in Section 2 above, shall be

specifically named in this Agreement. If not specifically named, such "affiliates" are not intended to be included, and are not included within, the scope of the Release, and Plaintiff hereby does not release any claims against such unnamed/unidentified affiliates.

10. <u>Entire Agreement</u>. This Agreement constitutes the complete understanding between the undersigned concerning the subject matter herein. This Agreement supersedes and replaces all other agreements, contracts, statements, representations, or understandings between or among the Parties, whether written or verbal. The Parties acknowledge that there have been no promises or representations concerning the subject matter of this Agreement other than those set forth herein. This Agreement cannot be altered, amended, or modified in any respect, except by a writing duly executed by the Parties.

11. <u>Severability</u>. If any provision of this Agreement is held illegal, invalid, or unenforceable, such holding shall not affect any other provision hereof. In the event any provision is held illegal, invalid, or unenforceable, such provision shall be limited so as to give effect to the intent of the Parties to the fullest extent permitted by applicable law.

12. <u>Interpretation</u>. This Agreement was negotiated and drafted at arms-length between counsel for the Parties, and, therefore, any rules requiring terms be interpreted against the drafter shall not apply. The term "Paragraph" shall refer to the enumerated paragraphs of this Agreement. The headings contained in this Agreement are for convenience of reference only and are not intended to limit the scope or affect the interpretation of any provision of this Agreement.

13. <u>Venue and Applicable Law</u>. This Agreement shall be interpreted and construed in accordance with the laws of the State of Georgia, without regard to its conflicts of law provisions. Venue and jurisdiction will be in the Georgia state or federal courts.

14. <u>Counterparts and Facsimiles</u>. This Agreement can be signed in counterparts, which, taken together, will constitute the entire agreement. Facsimile signatures will be treated as original signatures.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties have executed this Settlement and Release Agreement on the dates written below.

PLAINTIFF TALIA DAVIS, on behalf of herself and on behalf of the Class Members,

DocuSigned by:

*Talia Davis*

19C8FF8CC95545B...

11/30/2022

_____
Date

DEFENDANT THE GREAT AMERICAN DREAM, INC.

_____        _____
                                    Date

By: _____

Title: _____

DEFENDANT CARY ADAMS

_____        _____
                                    Date

DEFENDANT JAMES W. LEE (and/or the Estate of James W. Lee)

_____        _____
                                    Date

By: _____

Title: _____

IN WITNESS WHEREOF, the Parties have executed this Settlement and Release Agreement on the dates written below.

PLAINTIFF TALIA DAVIS, on behalf of herself and on behalf of the Class Members,

_____     _____
                                     Date

DEFENDANT THE GREAT AMERICAN DREAM, INC.

11-30-2022
Date

By: ASHLEY FOWLER

Title: CEO

DEFENDANT CARY ADAMS

11-30-2022
Date

DEFENDANT JAMES W. LEE (and/or the Estate of James W. Lee)

11-30-2022
Date

By: ASHLEY FOWLER

Title: Executor

- 7 -

**Exhibit A - Davis, et al. v. The Great American Dream, Inc., et al.**
**Settlement Payment Schedule and Amortization Table**

| | Payment Date | Principal | Interest (7.5% APR) | Total Payment | Total Interest Paid | Total Remaining Balance |
|---|---|---|---|---|---|---|
| | **Payment and Amortization Schedule** | | | | | |
| | On or before Dec. 31, 2022 | $ 100,000.00 | $ - | $ 100,000.00 | $ - | $ 150,000.00 |
| 1 | Mar. 1, 2023 | $ 12,500.00 | $ - | $ 12,500.00 | $ - | $ 137,500.00 |
| 2 | June 1, 2023* | $ 11,371.63 | $ 2,578.13 | $ 13,949.76 | $ 2,578.13 | $ 126,128.37 |
| 3 | Sept. 1, 2023 | $ 11,584.85 | $ 2,364.91 | $ 13,949.76 | $ 4,943.04 | $ 127,175.79 |
| 4 | Dec. 1, 2023** | $ 11,802.07 | $ 2,147.69 | $ 13,949.76 | $ 7,090.73 | $ 116,658.00 |
| 5 | Mar. 1, 2024 | $ 12,023.36 | $ 1,926.40 | $ 13,949.76 | $ 9,017.13 | $ 105,943.00 |
| 6 | June 1, 2024 | $ 12,248.80 | $ 1,700.96 | $ 13,949.76 | $ 10,718.09 | $ 95,027.09 |
| 7 | Sept. 1, 2024 | $ 12,478.46 | $ 1,471.30 | $ 13,949.76 | $ 12,189.39 | $ 83,906.51 |
| 8 | Dec. 1, 2024 | $ 12,712.43 | $ 1,237.33 | $ 13,949.76 | $ 13,426.72 | $ 72,577.42 |
| 9 | Mar. 1, 2025 | $ 12,950.79 | $ 998.97 | $ 13,949.76 | $ 14,425.69 | $ 61,035.91 |
| 10 | June 1, 2025 | $ 13,193.62 | $ 756.14 | $ 13,949.76 | $ 15,181.83 | $ 49,277.99 |
| 11 | Sept. 1, 2025 | $ 13,441.00 | $ 508.76 | $ 13,949.76 | $ 15,690.59 | $ 37,299.61 |
| 12 | Dec. 1, 2025 | $ 13,692.99 | $ 256.74 | $ 13,949.73 | $ 15,947.33 | $ 25,096.64 |
| | | | | | | |
| | **TOTALS** | $ 250,000.00 | $ 15,947.33 | $ 265,947.33 | | |

\* - Interest begins accruing after the Mar. 1, 2023 payment on the remaining balance of $137,500.00

$137,500 at 7.5% interest with 11 remaining quarterly payments.

Total interest = $15,947.33

\*\* - If payments totaling $250,000 are made on or before Dec. 30, 2023, all interest shall be waived, forgiven, and/or discharged.